UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NGA TRAN-PEDRETTI,

Plaintiff,

– against –

CIFC ASSET MANAGEMENT LLC, CIFC CORP., CIFC ACQUISITION CORP., CIFC PARENT HOLDINGS LLC, PETER GLEYSTEEN, STEVE VACCARO, OLIVER WRIEDT, FREDERICK ARNOLD, SAMUEL P. BARTLETT, MICHAEL R. EISENSON, JASON EPSTEIN, ANDREW INTRATER, PAUL F. LIPARI, ROBERT B. MACHINIST, TIM R. PALMER, and FRANK C. PULEO,

Defendants.

13 CV 4420 (RJS) (KNF)

ECF Case

**ANSWER AND COUNTERCLAIMS**

Defendants and Counterclaimants CIFC Asset Management LLC ("CIFCAM"), CIFC Corp. ("CIFC"), CIFC Acquisition Corp. ("CIFCAC"), CIFC Parent Holdings LLC ("CIFCPH"), Peter Gleysteen ("Gleysteen"), and Defendants Steve Vaccaro ("Vaccaro"), Oliver Wriedt ("Wriedt"), Frederick Arnold ("Arnold"), Samuel P. Bartlett ("Bartlett"), Michael Eisenson ("Eisenson"), Jason Epstein ("Epstein"), Andrew Intrater ("Intrater"), Paul F. Lipari ("Lipari"), Robert B. Machinist ("Machinist"), Tim R. Palmer ("Palmer"), and Frank C. Puleo ("Puleo") (collectively referred to herein as "Defendants"), by their attorneys Epstein Becker & Green, P.C., for their Answer to the Complaint and Counterclaims against Plaintiff Nga Tran-Pedretti, respectfully state as follows:

## INTRODUCTION

1. The allegations set forth in paragraph 1 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 1 is deemed to contain factual allegations, Defendants deny them.

2. The allegations set forth in paragraph 2 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 2 is deemed to contain factual allegations, Defendants deny them.

3. The allegations set forth in paragraph 3 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 3 is deemed to contain factual allegations, Defendants deny them.

4. The allegations set forth in paragraph 4 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 4 is deemed to contain factual allegations, Defendants deny them.

5. The allegations set forth in paragraph 5 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 5 is deemed to contain factual allegations, Defendants deny them.

## PARTIES

6. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6 of the Complaint.

7. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 7 of the Complaint, except admit that CIFCAM is a Delaware Limited Liability Company duly authorized to conduct business in the State of New York.

8. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Complaint, except admit that CIFCAM is an entity that conducts business in the State of New York.

9. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Complaint, except admit that CIFCAM's principle place of business is located at 250 Park Avenue, New York, New York 10177.

10. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 of the Complaint, except admit that CIFC is a Delaware corporation duly authorized to conduct business in the State of New York.

11. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint, except admit that CIFC is an entity that conducts business in the State of New York.

12. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Complaint, except admit that CIFC's principle place of business is located at 250 Park Avenue, New York, New York, 10177.

13. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 of the Complaint, except admit that CIFCAC is a Delaware corporation duly authorized to conduct business in the State of New York.

14. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Complaint, except admit that CIFCAC conducts business in the State of New York.

15. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15, except admit that CIFCAC's principle place of business is located at 250 Park Avenue, New York, New York 10177.

16. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Complaint, except admit that CIFCPH is a Delaware Limited Liability Company duly authorized to conduct business in the State of New York.

17. Deny the allegations set forth in paragraph 17 of the Complaint.

18. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 of the Complaint, except admit that CIFCPH's principle place of business is located at 250 Park Avenue, New York, New York, 10177.

19. Paragraph 19 of the Complaint is a statement regarding the format of the Complaint to which no response is required.

20. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of the Complaint, except admit that Gleysteen is a resident of the State of New York.

21. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 of the Complaint, except admit that Gleysteen is the Chief Executive Officer ("CEO") of CIFC.

22. Deny the allegations set forth in paragraph 22 of the Complaint, except admit that Gleysteen is a member of the Board of Directors of CIFC.

23. The allegations set forth in paragraph 23 of the Complaint constitute statements and conclusions of law to which no response is required.

24. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Complaint, except admit that Vaccaro is a resident of the State of New York.

25. Deny the allegations set forth in paragraph 25 of the Complaint, except admit that Vaccaro was the Co-Chief Investment Officer of CIFC until April 2011, and is now its Chief Investment Officer ("CIO").

26. The allegations set forth in paragraph 26 of the Complaint constitute statements and conclusions of law to which no response is required.

27. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Complaint, except admit that Wriedt is a resident of the State of New York.

28. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 28 of the Complaint, except admit that Wriedt is the Head – Capital Markets and Distribution of CIFC.

29. The allegations set forth in paragraph 29 of the Complaint constitute statements and conclusions of law to which no response is required.

30. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 30 of the Complaint, except admit that Arnold is a resident of the State of New York.

31. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 31 of the Complaint, except admit that Arnold is a member of the Board of Directors of CIFC.

32. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 32 of the Complaint, except admit that Bartlett is a resident of the Commonwealth of Massachusetts.

33. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33 of the Complaint, except admit that Bartlett is a member of the Board of Directors of CIFC.

34. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 34 of the Complaint, except admit that Eisenson is a resident of the Commonwealth of Massachusetts.

35. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35 of the Complaint, except admit that Eisenson is a member of the Board of Directors of CIFC.

36. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 of the Complaint, except admit that Epstein is a resident of the State of New York.

37. Admit the allegations set forth in paragraph 37 of the Complaint.

38. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 38 of the Complaint, except admit that Intrater is a resident of the State of New York.

39. Admit the allegations set forth in paragraph 39 of the Complaint.

40. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 40 of the Complaint, except admit that Lipari is a resident of the State of New York.

41. Admit the allegations set forth in paragraph 41 of the Complaint.

42. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 42 of the Complaint, except admit that Machinist is a resident of the State of New York.

43. Admit the allegations set forth in paragraph 43 of the Complaint.

44. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 44 of the Complaint, except admit that Palmer is a resident of the Commonwealth of Massachusetts.

45. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 45 of the Complaint, except admit that Palmer is a member of the Board of Directors of CIFC.

46. Deny the allegations set forth in paragraph 46 of the Complaint, and aver that Puleo is a resident of the State of Utah.

47. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47 of the Complaint, except admit that Puleo is a member of the Board of Directors of CIFC.

48. Paragraph 48 of the Complaint is a statement regarding the format of the Complaint to which no response is required.

49. Paragraph 49 of the Complaint is a statement regarding the format of the Complaint to which no response is required.

## JURISDICTION AND VENUE

50. The allegations set forth in paragraph 50 of the Complaint constitute statements and conclusions of law to which no response is required, except admit that the CIFC Defendants are authorized to conduct business in the New York.

51. The allegations set forth in paragraph 51 of the Complaint constitute statements and conclusions of law to which no response is required.

52. The allegations set forth in paragraph 52 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 52 is deemed to contain factual allegations, Defendants deny them.

53. The allegations set forth in paragraph 53 of the Complaint constitute statements and conclusions of law to which no response is required.

## FACTS COMMON TO ALL CAUSES OF ACTION

54. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 54 of the Complaint, except admit that Plaintiff is female and, upon information and belief, of Vietnamese national origin.

55. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 55 of the Complaint.

56. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 56 of the Complaint, except admit that Plaintiff held a mid-level position at J.P. Morgan prior to working for CIFC, and aver that Plaintiff was not responsible for managing J.P. Morgan's institutional relationships described in paragraph 56 of the Complaint, but worked, directly or indirectly, for Managing Directors and other senior

professionals who did, and did not originate senior and subordinated debt, merger and acquisition advisories or equity offerings, but rather worked, directly or indirectly, for Managing Directors and other senior professionals who did.

57. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 57 of the Complaint, except deny that "Plaintiff was one of the highest performing bankers at J.P. Morgan," and aver that Plaintiff held a mid-level position at J.P. Morgan, was either terminated from such employer or accepted severance in anticipation of termination from such employer, and was not employed at the time of her hire by Legacy CIFC (*defined* in par. 74, *infra*).

58. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 58 of the Complaint.

59. Deny the allegations set forth in paragraph 59 of the Complaint, except admit that Plaintiff was hired by Legacy CIFC in November 2005.

60. Deny the allegations set forth in paragraph 60 of the Complaint, except admit that Plaintiff was the first employee hired by Gleysteen to work for Legacy CIFC.

61. Deny the allegations set forth in paragraph 61 of the Complaint, except admit that Plaintiff was employed by CIFCAM, a wholly-owned subsidiary of CIFC, at the time of the termination of her employment.

62. Deny the allegations set forth in paragraph 62 of the Complaint, and aver that Plaintiff performed peripheral roles supporting Gleysteen following the formation of Legacy CIFC.

63. Deny the allegations set forth in paragraph 63 of the Complaint, and aver that Plaintiff was listed as a point of contact for the Company in certain press releases between April

2011 and December 2012, which does not indicate a position of stature or qualification in respect of the subject matter contained in such press releases.

64. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 64 of the Complaint.

65. Deny the allegations set forth in paragraph 65 of the Complaint, except admit that Plaintiff's role in 2006 and 2007 involved asset sourcing, and in 2008 and beyond shifted to responsibility for institutional relationships and marketing.

66. Deny the allegations set forth in paragraph 66 of the Complaint, except admit that in 2008, Plaintiff's title was changed to Head of Institutional Relationships, a position that involved, among other things, marketing and developing relationships with institutions with whom CIFC conducted business.

67. Deny that every performance review received by Plaintiff was "excellent" and the other allegations set forth in paragraph 67 of the Complaint, and aver that in 2010, 2011 and 2012, respectively, Plaintiff was advised that she should focus more on value-add concepts versus execution related ones; that she would likely be reporting to a more senior individual following CIFC's acquisition by Deerfield Capital Corp. in 2011; and that she did not have any significant institutional relationships despite being the Head of Institutional Relationships, and had not been responsible for sourcing a single investor during her tenure at the Company.

68. Deny the allegations set forth in paragraph 68 of the Complaint, except admit that Plaintiff received a written 2009 Year End Performance Evaluation, the contents of which speak for themselves.

69. Admit the allegations set forth in paragraph 69 of the Complaint that in or about October or November 2011, Plaintiff was placed in charge of marketing new CIFC funds to

clients of Sandler O'Neill, Credit Suisse, and Avebury Capital, and aver that Plaintiff was not successful in generating a single new investor as the result of these assignments, which is indicative of the poor quality of her performance as a marketer.

70. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 70 of the Complaint.

71. Deny the allegations set forth in paragraph 71 of the Complaint.

72. Deny the allegations set forth in paragraph 72 of the Complaint, except admit that Plaintiff's total cash compensation for 2011, including base salary and bonus, was $750,000.00, and aver that the value of Plaintiff's contributions to CIFC did not, at all times during her employment, justify the level of her compensation.

73. Deny the allegations set forth in paragraph 73 of the Complaint, except admit that Plaintiff is identified in seven funds managed by CIFC (the last of which was launched in September 2007) in a provision that permits certain investors to remove CIFC as manager of the respective funds if two of the four identified persons are no longer employed at CIFC, and aver that Plaintiff's identification in such funds did not and does not imply any particular stature or responsibility for such funds, that no investor has made inquiry regarding, or raised concern about, Plaintiff's departure in the context of such funds, and that she has had no input in the management of any of such funds or a role in any way critical to such funds.

74. Deny the allegations set forth in paragraph 74 of the Complaint, except

a. aver that "Commercial Industrial Finance Corp." ("Legacy CIFC"), a Delaware corporation, was formed in 2005 and that Plaintiff, along with other Legacy CIFC employees and sophisticated investors invested:

i. in 2005, 2006 and 2007, Common Shares, Restricted Common Shares (restricted in that their vesting was tied to certain time and performance vesting criteria) and Series A Preferred Shares in Legacy CIFC (with Plaintiff making a voluntary investment of approximately $418,000 in such shares); and

ii. in April 2008, Series A-1 Preferred Shares in Legacy CIFC (with Plaintiff making a voluntary investment of approximately $100,000 in such shares);

b. admit that in December 2009, a holding company, CIFCPH, a Delaware limited liability company, was formed above Legacy CIFC;

c. aver that Legacy CIFC became a 100%-owned, direct subsidiary of CIFCPH; and

d. admit that the Common Shares, Series A Preferred Shares and Series A-1 Preferred Shares in Legacy CIFC were converted into Common Units, Series A Preferred Units and Series A-1 Preferred Units of CIFCPH on the same economic terms as the original shares in Legacy CIFC.

75. Deny the allegations set forth in paragraph 75 of the Complaint, except aver that:

a. in 2005, 2006, 2007 and 2008 Plaintiff made certain investments in Legacy CIFC as described in paragraph 74 above;

b. in February 2010, certain CIFC employees, including Plaintiff, were awarded Series A-1 Preferred Units in CIFCPH as a partial bonus with respect to the 2009 performance year;

c. in June 2011, certain CIFC employees, including Plaintiff, were awarded additional equity in CIFCPH in the form of "profits interests";

d. in June 2011, certain CIFC employees, including Plaintiff, were awarded stock options in CIFC; and

e. in March 2012, certain CIFC employees, including Plaintiff, elected to receive stock options in CIFC.

76. Admit the allegations set forth in paragraph 76 of the Complaint that Plaintiff was one of the top four or five most highly compensated employees in the Company, except aver that the value of Plaintiff's contributions to CIFC did not, at all times during her employment, justify the level of her compensation.

77. Deny the allegations set forth in paragraph 77 of the Complaint.

a. Deny that Plaintiff ever received "strong reviews" with respect to marketing to investors and the other allegations set forth in paragraph 77(a) of the Complaint, and aver that Plaintiff did not source the investor referred to in paragraph 77(a) of the Complaint and was neither solely nor even substantially responsible for the successful closing of such investor's investment in a fund managed by CIFC.

b. Deny the allegations set forth in paragraph 77(b) of the Complaint, except aver that Plaintiff, at her level, was not included, was not qualified to be included, and should not have expected to be included, on every marketing trip; nevertheless, Plaintiff did travel, both domestically and internationally, to assist in marketing, but did not raise any money on any of these trips.

c. Deny the allegations set forth in paragraph 77(c) of the Complaint.

d. Deny the allegations set forth in paragraph 77(d) of the Complaint, and aver that Plaintiff has, for her own disingenuous, scurrilous and vindictive purposes, falsely and

inaccurately described a legitimate conversation initiated by a foreign-based consultant regarding well-recognized differences in the business cultures of different countries.

e. Deny the allegations set forth in paragraph 77(e) of the Complaint.

f. Deny the allegations set forth in paragraph 77(f) of the Complaint, and aver that this scurrilous and spurious allegation is belied by, among other things, the facts that Plaintiff was the first person Gleysteen hired to work at Legacy CIFC (par. 60, *supra*) and was always one of the top four or five most highly compensated employees at CIFC, despite the fact that the value of Plaintiff's contributions to CIFC did not, at all times during her employment, justify the level of her compensation. (par. 76, *supra*).

g. Deny the allegations set forth in paragraph 77(g) of the Complaint.

h. Admit the allegations set forth in paragraph 77(h) of the Complaint that in March 2012, Wriedt was hired to lead CIFC's Capital Markets & Distribution Group, a group whose mandate was and is significantly broader than the functions performed by Plaintiff.

i. Deny the allegations set forth in paragraph 77(i) of the Complaint, except admit that Plaintiff, who had a demonstrable lack of success in marketing, was assigned to report to Wriedt, who had been a Managing Director in multiple prior institutions, had and has substantial experience and demonstrable success in marketing—including, without limitation, at CIFC—after he was hired to strengthen and improve CIFC's marketing function and origination of investments; and aver that Plaintiff was not in any way qualified to be the head of marketing, and that Gleysteen informed Plaintiff well before CIFC's acquisition by Deerfield Capital Corp. in 2011 that she would be reporting to a new head of marketing at some point in the future.

j. Deny the allegations set forth in paragraph 77(j) of the Complaint, except aver that Plaintiff had a demonstrable lack of success in marketing.

k. Deny the allegations set forth in paragraph 77(k) of the Complaint.

l. Deny the allegations set forth in paragraph 77(l) of the Complaint.

m. Deny the allegations set forth in paragraph 77(m) of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation concerning how Plaintiff felt.

n. Deny the allegations set forth in paragraph 77(n) of the Complaint.

o. Deny the allegations set forth in paragraph 77(o) of the Complaint.

p. Deny the allegations set forth in paragraph 77(p) of the Complaint.

q. Deny the allegations set forth in paragraph 77(q) of the Complaint.

r. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 77(r) of the Complaint.

s. Deny the allegations set forth in paragraph 77(s) of the Complaint, except admit that a business dinner for members of the Investment and Capital Markets & Distribution teams did occur, Plaintiff was invited to attend and did attend such dinner, along with other women, that everyone at the dinner, male and female, including Plaintiff, was invited to another establishment for the common convention of after-dinner drinks, and that some men and women did, and some men (including Wriedt) and women did not, accept the invitation, in each case without positive or negative career consequences.

t. Deny the allegations set forth in paragraph 77(t) of the Complaint, except admit that CIFC hosted a holiday party from 6:00 p.m to 11:00 p.m. on December 4, 2012, and aver that Plaintiff departed from the party prior to 8:00 p.m., long before the completely irrelevant events falsely and inaccurately described in paragraph 77(t) of the Complaint.

u. Deny the allegations set forth in paragraph 77(u) of the Complaint.

v. Deny the allegations set forth in paragraph 77(v) of the Complaint, and otherwise refer to paragraph 77(d) for its response to this scurrilous and spurious allegation.

w. Deny the allegations set forth in paragraph 77(w) of the Complaint.

x. Deny the allegations set forth in paragraph 77(x) of the Complaint, and aver that Plaintiff was not asked, nor was she qualified to be asked (because, among other reasons, she never had a material management role at a prior employer, and for the last five years of her employment at CIFC, had only a single, junior-level direct report), to join CIFC's Management Committee that was created in mid-2012 and was comprised of individuals who had each previously held Managing Director-level and more senior level roles at their prior employers and had and have significant management and other experience.

y. Deny the allegations set forth in paragraph 77(y) of the Complaint, except admit that at the time of its creation, the Management Committee was comprised of Gleysteen, Vaccaro, Wriedt, and the Chief Operating Officer ("COO")—all of whom had previously held Managing Director-level and more senior level roles at their prior employers—with the General Counsel serving as an *ex officio* member; and aver that, in December 2012, in addition to Plaintiff, four other male employees, three of whom were white, two of whom held higher level positions than Plaintiff (including a member of the Management Committee), separated from employment with CIFC.

z. Deny the allegations set forth in paragraph 77(z) of the Complaint, except admit that in or about July 2012, CIFC hired a management consultant ("Consultant").

aa. Deny knowledge or information sufficient to form a belief as the truth of the allegations set forth in paragraph 77(aa) of the Complaint, except admit that Plaintiff and certain other employees of CIFC were interviewed by the Consultant.

bb. Admit the allegations set forth in paragraph 77(bb) of the Complaint that the Consultant reported his findings to the full Board of CIFC.

cc. Deny the allegations set forth in paragraph 77(cc) of the Complaint.

dd. Deny the allegations set forth in paragraph 77(dd) of the Complaint.

ee. Deny the allegations set forth in paragraph 77(ee) of the Complaint.

ff. Deny the allegations set forth in paragraph 77(ff) of the Complaint.

gg. Deny the allegations set forth in paragraph 77(gg) of the Complaint.

hh. Deny the allegations set forth in paragraph 77(hh) of the Complaint.

ii. Admit the allegations set forth in paragraph 77(ii) of the Complaint that the Consultant reported his findings to the full Board of CIFC.

jj. Deny the allegations set forth in paragraph 77(jj) of the Complaint, and aver that Plaintiff was not included in meetings of CIFC's Management Committee because Plaintiff was not a member of CIFC's Management Committee.

kk. Deny the allegations set forth in paragraph 77(kk) of the Complaint, except admit that the Management Committee, of which Gleysteen is a member, was created in mid-2012.

ll. Deny the allegations set forth in paragraph 77(ll) of the Complaint, except admit that, in or about September 2012, Vaccaro, aware that Plaintiff would no longer be reporting to Wriedt, offered her a role on the Investment Research Team at CIFC (without reduction in her compensation level), which she refused.

mm. Deny the allegations set forth in paragraph 77(mm) of the Complaint, except admit that in or about September 2012, Wriedt informed Plaintiff that she would no longer be part of the marketing team, and aver, upon information and belief, that Plaintiff has asserted the false allegation that Wriedt "implied that her gender, race, ethnicity, age and

national origin would prevent her from being successful in marketing to institutional investors" to further Plaintiff's disingenuous, scurrilous and vindictive pecuniary ends.

i. Deny the allegations set forth in paragraph 77(mm)(i), and aver that Wriedt directly observed Plaintiff in matters relating to marketing and institutional relationships.

ii. Deny the allegations set forth in paragraph 77(mm)(ii), and aver that Wriedt communicated directly to Plaintiff that her performance was subpar and did not justify the level of her compensation.

iii. Deny the allegations set forth in paragraph 77(mm)(iii), and aver that Plaintiff's allegation that Wriedt "had less experience than her in the loan asset class" is patently absurd in light of his having held significantly more senior prior roles than Plaintiff, including in the loan asset class.

iv. Deny the allegations set forth in paragraph 77(mm)(iv), and aver that Plaintiff's allegation that Wriedt "was out of touch with investors" that Plaintiff targeted is patently absurd and belied by his significant and numerous capital raising successes in 2012 and 2013 at CIFC.

nn. Deny the allegations set forth in paragraph 77(nn) of the Complaint, except admit that, in or about September 2012, Plaintiff was informed that her position on the marketing team had been deemed unessential and was being eliminated, and that CIFC hoped to find a new role for her, but Plaintiff rejected any roles suggested to her and insisted that she would only perform a marketing role.

oo. Deny the allegations set forth in paragraph 77(oo) of the Complaint, except admit that in or about September 2012, Gleysteen and Plaintiff had lunch at Café Centro in the MetLife Building at Grand Central Station to discuss other opportunities for Plaintiff at CIFC.

pp. Deny the allegations set forth in paragraph 77(pp) of the Complaint.

qq. Deny the allegations set forth in paragraph 77(qq) of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff developed a medical condition.

rr. Deny the allegations set forth in paragraph 77(rr) of the Complaint.

78. Deny the allegations set forth in paragraph 78 of the Complaint, and aver that the Company has always had, and continues to have, numerous female senior employees.

79. Deny the allegations set forth in paragraph 79 of the Complaint.

80. Deny the allegations set forth in paragraph 80 of the Complaint.

81. Deny the allegations set forth in paragraph 81 of the Complaint.

82. Deny the allegations set forth in paragraph 82 of the Complaint, except admit that, in addition to Plaintiff, four other male employees, three of whom were white, two of whom held higher level positions than Plaintiff (including a member of the Management Committee), were separated from employment in December 2012.

83. Deny the allegations set forth in paragraph 83 of the Complaint.

84. Deny the allegations set forth in paragraph 84 of the Complaint.

85. Deny the allegations set forth in paragraph 85 of the Complaint.

86. Deny the allegations set forth in paragraph 86 of the Complaint.

87. Deny the allegations set forth in paragraph 87 of the Complaint.

88. Deny the allegations set forth in paragraph 88 of the Complaint.

89. Deny the allegations set forth in paragraph 89 of the Complaint.

90. Deny the allegations set forth in paragraph 90 of the Complaint.

91. Deny the allegations set forth in paragraph 91 of the Complaint.

92. Deny the allegations set forth in paragraph 92 of the Complaint.

93. Deny the allegations set forth in paragraph 93 of the Complaint.

94. Deny the allegations set forth in paragraph 94 of the Complaint.

95. Deny the allegations set forth in paragraph 95 of the Complaint.

96. Deny the allegations set forth in paragraph 96 of the Complaint.

97. Deny the allegations set forth in paragraph 97 of the Complaint.

98. Deny the allegations set forth in paragraph 98 of the Complaint, and aver that (i) in 2010, Legacy CIFC was a private company, and Deerfield Capital Corp. ("DFR") was a public company that sought to and successfully acquired Legacy CIFC in April 2011 (the "Transaction"); (ii) Legacy CIFC was the target in the transaction, and DFR, as acquiror, determined the price paid in the Transaction, and (iii) DFR's Board of Directors and a subcommittee of independent directors of the DFR Board (known as the "Special Committee") performed a thorough analysis of the acquisition of CIFC, supported by, among other independent information and service providers, fairness opinions of two different independent valuation firms.

99. Deny the allegations set forth in paragraph 99 of the Complaint, and aver that Plaintiff was neither experienced nor qualified, nor was it her role, to evaluate and make recommendations regarding the "estimated dollar amount and timing of cost synergies associated with the merger," and that substantial and thorough due diligence was performed in connection with the Transaction.

100. Deny the allegations set forth in paragraph 100 of the Complaint, and aver that (i) Gleysteen did not believe the information provided on behalf of Legacy CIFC was misleading for its intended purpose, and (ii) the financially successful results of the combined company constitute evidence that the Numbers Plaintiff refers to were not overly aggressive, unachievable or misleading.

101. Deny the allegations set forth in paragraph 101 of the Complaint, and aver that substantial and thorough due diligence was performed in connection with the Transaction (*see* pars. 98 and 99, *supra*).

102. Deny the allegations set forth in paragraph 102 of the Complaint.

103. Deny the allegations set forth in paragraph 103 of the Complaint, and aver that the DFR Board of Directors and Special Committee performed substantial and thorough due diligence to estimate the benefits of the Transaction.

104. Deny the allegations set forth in paragraph 104 of the Complaint, and aver that the DFR Board of Directors and Special Committee performed substantial and thorough due diligence to estimate the benefits of the combined company, including, but not limited to, obtaining fairness opinions of two different independent valuation firms.

105. The allegations set forth in paragraph 105 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 105 is deemed to contain factual allegations, Defendants deny them.

106. Deny the allegations set forth in paragraph 106 of the Complaint, and aver that that the financially successful results of the combined company constitute evidence that the Numbers Plaintiff refers to were not misleading.

107. Deny the allegations set forth in paragraph 107 of the Complaint.

108. Deny that Plaintiff's performance was "exceptionally strong" during the course of her employment and the other allegations set forth in paragraph 108 of the Complaint, and aver that there were numerous performance-related issues during her employment (*see* par. 67, *supra*).

109. Deny the allegations set forth in paragraph 109 of the Complaint.

110. Deny the allegations set forth in paragraph 110 of the Complaint.

111. Deny the allegations set forth in paragraph 111 of the Complaint.

112. Deny the allegations set forth in paragraph 112 of the Complaint, and aver that (i) the Company did not initiate communications regarding Plaintiff's departure other than to a single client of the Company that had, or would expect to have, near-term contact with Plaintiff had she remained employed, (ii) the Company did not otherwise communicate Plaintiff's departure other than in response to typical, periodic questions from clients and prospective clients of the Company, who perform ongoing diligence on the Company in a number of areas, including with respect to staffing changes, as is customary in the industry, (iii) all such communications were made in a respectful manner, not designed to impugn Plaintiff's character or performance in any way, and without revealing specifics as to whether Plaintiff was terminated or departed voluntarily, and (iv) the allegation that Defendants communicated Plaintiff's termination to "everyone . . . on Wall Street" is patently absurd.

113. Deny the allegations set forth in paragraph 113 of the Complaint.

114. Deny the allegations set forth in paragraph 114 of the Complaint, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning how Plaintiff felt.

115. Deny the allegations set forth in paragraph 115 of the Complaint.

116. Deny the allegations set forth in paragraph 116 of the Complaint.

117. Deny the allegations set forth in paragraph 117 of the Complaint.

118. Deny the allegations set forth in paragraph 118 of the Complaint.

119. Deny the allegations set forth in paragraph 119 of the Complaint.

120. Deny the allegations set forth in paragraph 120 of the Complaint.

121. Deny the allegations set forth in paragraph 121 of the Complaint.

122. Deny the allegations set forth in paragraph 122 of the Complaint.

123. Deny the allegations set forth in paragraph 123 of the Complaint.

124. Deny the allegations set forth in paragraph 124 of the Complaint, and deny that Plaintiff is entitled to punitive damages, or any damages, as a matter of law.

125. Deny the allegations set forth in paragraph 125 of the Complaint.

126. Deny the allegations set forth in paragraph 126 of the Complaint.

127. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 127 of the Complaint.

128. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 128 of the Complaint.

129. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 129 of the Complaint.

130. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 130 of the Complaint.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR RACIAL, ETHNIC AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AND NEW YORK CITY HUMAN RIGHTS LAW**

131. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 130 of the Complaint with the same force and effect as if fully set forth at length herein.

132. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 132 of the Complaint.

133. Deny the allegations set forth in paragraph 133 of the Complaint, and aver that there were numerous performance-related issues during Plaintiff's employment (*see* par. 67, *supra*).

134. Deny the allegations set forth in paragraph 134 of the Complaint.

135. Deny the allegations set forth in paragraph 135 of the Complaint.

136. Deny the allegations set forth in paragraph 136 of the Complaint.

137. Deny the allegations set forth in paragraph 137 of the Complaint, and aver that Plaintiff has asserted this false claim for her own disingenuous, scurrilous and vindictive purposes.

138. Deny the allegations set forth in paragraph 138 of the Complaint, and aver that Plaintiff has asserted this false claim for her own disingenuous, scurrilous and vindictive purposes.

139. Deny the allegations set forth in paragraph 139 of the Complaint.

140. Deny the allegations set forth in paragraph 140 of the Complaint.

141. Deny the allegations set forth in paragraph 141 of the Complaint.

142. Deny the allegations set forth in paragraph 142 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION FOR SEX AND GENDER DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AND THE NEW YORK CITY HUMAN RIGHTS LAW

143. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 142 of the Complaint with the same force and effect as if fully set forth at length herein.

144. Deny the allegations set forth in paragraph 144 of the Complaint.

145. Deny the allegations set forth in paragraph 145 of the Complaint.

146. Deny the allegations set forth in paragraph 146 of the Complaint.

147. Deny the allegations set forth in paragraph 147 of the Complaint, and aver that Plaintiff has asserted this false claim for her own disingenuous, scurrilous and vindictive purposes.

148. Deny the allegations set forth in paragraph 148 of the Complaint, and aver that Plaintiff has, for her own disingenuous, scurrilous and vindictive purposes, falsely and inaccurately described harmless, casual conversations initiated by Plaintiff with her friend and colleague of seven years, Vaccaro, in which she spoke proudly of the strictness of her upbringing, and the strictness with which she raised her children, in reference to the 2011 publication of the book "Battle Hymn of the Tiger Mother" by Amy Chua.

149. Deny the allegations set forth in paragraph 149 of the Complaint, and aver that Plaintiff has asserted this false claim for her own disingenuous, scurrilous and vindictive purposes.

150. Deny the allegations set forth in paragraph 150 of the Complaint.

151. Deny the allegations set forth in paragraph 151 of the Complaint.

152. Deny the allegations set forth in paragraph 152 of the Complaint.

153. Deny the allegations set forth in paragraph 153 of the Complaint.

154. Deny the allegations set forth in paragraph 154 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION FOR AGE DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AND THE NEW YORK CITY HUMAN RIGHTS LAW

155. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 154 of the Complaint with the same force and effect as if fully set forth at length herein.

156. Aver that the allegations set forth in paragraph 156 of the Complaint constitute statements and conclusions of law to which no response is required, except admit, upon information and belief, that Plaintiff is over the age of 40.

157. Deny the allegations set forth in paragraph 157 of the Complaint.

158. Deny the allegations set forth in paragraph 158 of the Complaint.

159. Deny the allegations set forth in paragraph 159 of the Complaint.

160. Deny the allegations set forth in paragraph 160 of the Complaint.

161. Deny the allegations set forth in paragraph 161 of the Complaint.

162. Deny the allegations set forth in paragraph 162 of the Complaint.

163. Deny the allegations set forth in paragraph 163 of the Complaint.

164. Deny the allegations set forth in paragraph 164 of the Complaint.

165. Deny the allegations set forth in paragraph 165 of the Complaint.

166. Deny the allegations set forth in paragraph 166 of the Complaint.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AND NEW YORK CITY HUMAN RIGHTS LAW**

167. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 166 of the Complaint with the same force and effect as if fully set forth at length herein.

168. Deny the allegations set forth in paragraph 168 of the Complaint.

169. Deny the allegations set forth in paragraph 169 of the Complaint, except admit that Gleysteen and Plaintiff had a lunch to discuss other opportunities for Plaintiff at CIFC.

170. Deny the allegations set forth in paragraph 170 of the Complaint, and aver that Vaccaro and Gleysteen both suggested specific, alternative potential roles for Plaintiff at CIFC (*see, e.g.,* par. 77(ll), *supra*), which she rejected, insisting that she would accept only a marketing role at CIFC.

171. Deny the allegations set forth in paragraph 171 of the Complaint, except admit that Plaintiff refused to accept any role at CIFC other than marketing, a role in which she had a demonstrable lack of success.

172. Deny the allegations set forth in paragraph 172 of the Complaint.

173. Deny the allegations set forth in paragraph 173 of the Complaint, and aver that Plaintiff was initially responsible for a portion of a presentation to be presented to certain investors in Asia, but which responsibility was removed following her poor performance thereon.

174. Deny the allegations set forth in paragraph 174 of the Complaint, and aver that Plaintiff had no legitimate reason or reasonable expectation to be included in such meetings.

175. Deny the allegations set forth in paragraph 175 of the Complaint.

176. Deny the allegations set forth in paragraph 176 of the Complaint.

177. Deny the allegations set forth in paragraph 177 of the Complaint.

178. Deny the allegations set forth in paragraph 178 of the Complaint.

179. Deny the allegations set forth in paragraph 179 of the Complaint.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR DISCRIMINATION AGAINST PLAINTIFF IN WAGES AND COMPENSATION IN VIOLATION OF THE EQUAL PAY ACT OF 1963, NEW YORK STATE HUMAN RIGHTS LAW AND NEW YORK CITY HUMAN RIGHTS LAW**

180. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 179 of the Complaint with the same force and effect as if fully set forth at length herein.

181. Deny the allegations set forth in paragraph 181 of the Complaint, except aver that (i) Plaintiff was one of the top four or five most highly compensated employees in the Company, (ii) the value of Plaintiff's contributions to CIFC did not, at all times during her employment, justify the level of her compensation, and (iii) Plaintiff's compensation was high relative to employees with similar (or greater) experience than Plaintiff.

182. Deny the allegations set forth in paragraph 182 of the Complaint, except aver that (i) Plaintiff was one of the top four or five most highly compensated employees in the Company, (ii) the value of Plaintiff's contributions to CIFC did not, at all times during her employment, justify the level of her compensation, and (iii) Plaintiff's compensation was high relative to employees with similar (or greater) experience than Plaintiff.

183. Deny the allegations set forth in paragraph 183 of the Complaint.

184. Deny the allegations set forth in paragraph 184 of the Complaint.

185. Deny the allegations set forth in paragraph 185 of the Complaint.

186. Deny the allegations set forth in paragraph 186 of the Complaint, except aver that Plaintiff and CIFC had previously entered into a Non-Disclosure, Non-Competition, Non-Hiring, Non-Solicitation and Severance Agreement (the "Non-Disclosure Agreement), which included

the concept of the payment to Plaintiff of a bonus in the year of her termination, which bonus amount was offered to Plaintiff in accordance with the Non-Disclosure Agreement at the time of her departure from CIFC.

187. Deny the allegations set forth in paragraph 187 of the Complaint.

188. Deny the allegations set forth in paragraph 188 of the Complaint.

189. Deny the allegations set forth in paragraph 189 of the Complaint.

190. Deny the allegations set forth in paragraph 190 of the Complaint.

191. Deny the allegations set forth in paragraph 191 of the Complaint.

192. Deny the allegations set forth in paragraph 192 of the Complaint.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR SEXUAL HARASSMENT AGAINST ALL DEFENDANTS IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AND NEW YORK CITY HUMAN RIGHTS LAW**

193. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 192 of the Complaint with the same force and effect as if fully set forth at length herein.

194. Deny the allegations set forth in paragraph 194 of the Complaint, and aver that the Complaint contains no allegations of "remarks concerning Plaintiff's sex."

195. Deny the allegations set forth in paragraph 195 of the Complaint, except admit that Plaintiff's employment was terminated in December 2012 after she refused to accept any role at CIFC other than a marketing role.

196. Deny the allegations set forth in paragraph 196 of the Complaint.

197. Deny the allegations set forth in paragraph 197 of the Complaint.

198. Deny the allegations set forth in paragraph 198 of the Complaint.

199. Deny the allegations set forth in paragraph 199 of the Complaint.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR WRONGFUL DISCHARGE ON THE BASIS OF RACE, NATIONAL ORIGIN, AGE, SEX AND GENDER**

200. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 199 of the Complaint with the same force and effect as if fully set forth at length herein.

201. Deny the allegations set forth in paragraph 201 of the Complaint, except admit that on or about December 13, 2012, Plaintiff was informed of the termination of her employment.

202. Deny the allegations set forth in paragraph 202 of the Complaint.

203. Deny the allegations set forth in paragraph 203 of the Complaint.

204. Deny the allegations set forth in paragraph 204 of the Complaint.

205. Deny the allegations set forth in paragraph 205 of the Complaint.

206. Deny the allegations set forth in paragraph 206 of the Complaint.

207. Deny the allegations set forth in paragraph 207 of the Complaint.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR FRAUD IN VIOLATION OF NEW YORK STATE LAW**

208. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 207 of the Complaint with the same force and effect as if fully set forth at length herein.

209. Deny the allegations set forth in paragraph 209 of the Complaint, and aver that:

a. Plaintiff made investments of approximately $518,000 in respect to the Common, Restricted Common, Preferred Series A and Preferred Series A-1 Shares of Legacy CIFC described herein (*see* par. 74, *supra*),

b. Plaintiff has been paid in excess of $1,000,000 in distributions to date on such investments, which significantly exceeds the amount invested, and was offered significant additional amounts in respect of such investments, which Plaintiff was free to accept or not, and to remain invested in the Company or not, following her separation from employment from the Company.

c. Plaintiff has been treated fairly with respect to such investments and consistently with other investors in such investments.

210. Deny the allegations set forth in paragraph 210 of the Complaint, and aver that, in April 2008, Plaintiff invested in Legacy CIFC by purchasing $100,000 in the Series A-1 Preferred Stock of Legacy CIFC (*see* paragraphs 74 and 209, *supra*) and that Plaintiff has been treated fairly with respect to such investments and consistently with other investors in such investments.

211. Deny the allegations set forth in paragraph 211 of the Complaint, and refer to the investments described herein (*see* par. 74, *supra*).

212. Deny the allegations set forth in paragraph 212 of the Complaint, and aver that Plaintiff has been treated fairly with respect to her investments in CIFC and consistently with other investors in such investments, including with respect to the portion of the affiliated group of CIFC that such investments represent.

213. Deny the allegations set forth in paragraph 213 of the Complaint.

214. Deny the allegations set forth in paragraph 214 of the Complaint, and aver that Plaintiff has been treated fairly with respect to her investments in CIFC and consistently with other investors in such investments, including by providing Plaintiff with significant, periodic

detail on such investments, including detailed individualized valuation materials as of June 2011 and December 2012.

215. Deny the allegations set forth in paragraph 216 of the Complaint.

216. Deny the allegations set forth in paragraph 216 of the Complaint, and aver that this scurrilous and spurious allegation is belied by, among other things, the good faith valuations that were made as of December 31, 2012 and presented to Plaintiff (*see* par. 214, *supra*).

217. Deny the allegations set forth in paragraph 217 of the Complaint, and aver that Plaintiff was not entitled to 2.5 % of the value of CIFC's affiliated group.

218. Deny the allegations set forth in paragraph 218 of the Complaint.

**AS AND FOR A NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY IN VIOLATION OF NEW YORK STATE LAW**

219. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 218 of the Complaint with the same force and effect as if fully set forth at length herein.

220. Deny the allegations set forth in paragraph 220 of the Complaint, and aver that this scurrilous and spurious allegation is belied by, among other things, the facts that (a) Plaintiff has been treated fairly with respect to her investments in CIFC and consistently with other investors in such investments (*see* par. 209(c), *supra*); (b) Plaintiff has received in excess of $1,000,000 in cash distributions in respect to her investments with the Company (*see* par. 209(b), *supra*); (c) the Company made a good faith offer to Plaintiff in respect of her investments, which she was free to accept or not, and to remain in her investments or not, following her separation from employment from the Company (*see* par. 209(b), *supra*); and (d) significant, periodic information regarding Plaintiff's investments has been provided to her (*see* par. 214, *supra*).

221. Deny the allegations set forth in paragraph 221 of the Complaint.

222. Deny the allegations set forth in paragraph 222 of the Complaint.

223. Deny the allegations set forth in paragraph 223 of the Complaint.

224. Deny the allegations set forth in paragraph 224 of the Complaint.

**AS AND FOR A TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR FRAUD UNDER DELAWARE STATE LAW**

225. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 224 of the Complaint with the same force and effect as if fully set forth at length herein.

226. Deny the allegations set forth in paragraph 226 of the Complaint, and aver that this scurrilous and spurious allegation is belied by, among other things, the facts that (a) Plaintiff has been treated fairly with respect to her investments in CIFC and consistently with other investors in such investments (*see* par. 209(c), *supra*); and (b) in connection with her investments in the Common Shares, Preferred Series A Shares and Preferred Series A-1 Shares, Plaintiff represented to the Company that she had (i) "…sufficient knowledge and experience in financial and business matters and in making high risk investments of the type of the [Shares] and that [she was] capable of evaluating the merits and risks…" of the Shares, and (ii) "…been furnished access to the business records of the Company and such additional information…and been afforded the opportunity to ask questions and receive answers…concerning the terms and conditions…and all other matters deemed relevant" by her in respect of her investments in the Shares.

227. Deny the allegations set forth in paragraph 227 of the Complaint.

228. Deny the allegations set forth in paragraph 228 of the Complaint.

229. Deny the allegations set forth in paragraph 229 of the Complaint.

230. Deny the allegations set forth in paragraph 230 of the Complaint.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY UNDER DELAWARE STATE LAW**

231. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 230 of the Complaint with the same force and effect as if fully set forth at length herein.

232. Deny the allegations set forth in paragraph 232 of the Complaint, except aver that significant, periodic information regarding Plaintiff's investments has been provided to her (*see* par. 214, *supra*).

233. Deny the allegations set forth in paragraph 233 of the Complaint.

**AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF § 73-210(b) AND § 73-605 OF THE DELAWARE SECURITIES ACT (6 DEL. C. § 73-101 et seq.)**

234. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 233 of the Complaint with the same force and effect as if fully set forth at length herein.

235. The allegations set forth in paragraph 235 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 235 is deemed to contain factual allegations, admit that CIFC is a publicly traded company on the NASDAQ CM exchange and is governed by a Board of Directors, on which the Individual Defendants identified above as Board members sit.

236. The allegations set forth in paragraph 236 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 236 is deemed to contain factual allegations, Defendants deny them.

237. The allegations set forth in paragraph 237 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 237 is deemed to contain factual allegations, Defendants deny them.

238. Deny the allegations set forth in paragraph 238 of the Complaint.

239. Deny the allegations set forth in paragraph 239 of the Complaint, and aver that this scurrilous and spurious allegation is belied by, among other things, the facts that (a) Plaintiff has been treated fairly with respect to her investments in CIFC and consistently with other investors in such investments (*see* par. 209(c), *supra*); and (b) significant, periodic information regarding Plaintiff's investments has been provided to her (*see* par. 214, *supra*).

240. Deny the allegations set forth in paragraph 240 of the Complaint.

241. Deny the allegations set forth in paragraph 241 of the Complaint; aver that this scurrilous and spurious allegation is belied by, among other things, the facts that significant, periodic information regarding Plaintiff's investments has been provided to her (*see* par. 214, *supra*).

242. Deny the allegations set forth in paragraph 242 of the Complaint.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATING RULE 10-b-5 OF THE SECURITIES EXCHANGE ACT OF 1934**

243. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 242 of the Complaint with the same force and effect as if fully set forth at length herein.

244. Deny the allegations set forth in paragraph 244 of the Complaint.

245. Deny the allegations set forth in paragraph 245 of the Complaint.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATING THE DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT

246. Defendants repeat and reallege their responses to the allegations set forth in Paragraphs 1 through 245 of the Complaint with the same force and effect as if fully set forth at length herein.

247. Admit the allegations set forth in paragraph 247 of the Complaint.

248. The allegations set forth in paragraph 248 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 248 is deemed to contain factual allegations, Defendants deny them.

249. Deny the allegations set forth in paragraph 249 of the Complaint, and aver that in 2010, DFR was a public company that sought to and successfully acquired CIFC in April 2011; the "Numbers" Plaintiff alleges "could likely be misleading for their intended purpose" were numbers prepared by CIFC, the target in the transaction, whereas the acquiror typically determines the fair price to pay for the acquisition target; and the decision makers at DFR were DFR's Board of Directors and a subcommittee of independent directors of the DFR Board (known as the "Special Committee"), which performed a thorough analysis of the acquisition of CIFC, including by retaining two different, independent outside valuation firms; and that Plaintiff was neither experienced nor qualified, nor was it her role, to evaluate and make recommendations regarding the Numbers and that the financially successful results of the combined company constitute evidence that the Numbers Plaintiff refers to were neither misleading nor unsubstantiated.

250. Deny the allegations set forth in paragraph 250 of the Complaint, and aver that the financially successful results of the combined company constitute evidence that the Numbers Plaintiff refers to were not misleading.

251. Deny the allegations set forth in paragraph 251 of the Complaint, and aver that the financially successful results of the combined company constitute evidence that the Numbers Plaintiff refers to were supported by the thorough analysis conducted by DFR's Board of Directors and Special Committee.

252. Deny the allegations set forth in paragraph 252 of the Complaint, and aver that Plaintiff, through her lack of experience and qualifications, never made any valid or legitimate "disclosures" regarding the Numbers to Gleysteen or Bartlett, or any "representatives of the Company and the Board" during the term of her employment.

253. The allegations set forth in paragraph 253 of the Complaint constitute statements and conclusions of law to which no response is required. To the extent that paragraph 253 is deemed to contain factual allegations, Defendants deny them.

254. Deny the allegations set forth in paragraph 254 of the Complaint.

255. Deny the allegations set forth in paragraph 255 of the Complaint.

256. Deny the allegations set forth in paragraph 256 of the Complaint.

257. Deny the allegations set forth in paragraph 257 of the Complaint.

## PRAYER FOR RELIEF

258. Denies that Plaintiff is entitled to any of the relief requested in the unnumbered WHEREFORE clause of the Complaint, and denies that Plaintiff is entitled to any relief whatsoever.

## DEFENSES TO THE COMPLAINT

### FIRST DEFENSE

259. The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

260. Defendants' treatment of Plaintiff was based on reasonable, legitimate business factors, was non-discriminatory and non-harassing in nature, and was consistent with and in compliance with the New York State Human Rights Law, N.Y.S. Exec. Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Adm. Code § 8-107 *et seq.* ("NYCHRL"), and all other applicable law, including, if asserted at some point in this litigation, Title VII of the Civil Rights Act of 1964.

### THIRD DEFENSE

261. Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

### FOURTH DEFENSE

262. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands, estoppel, laches, waiver and other equitable defenses.

### FIFTH DEFENSE

263. Plaintiff's claims are barred, in whole or in part, due to her failure to mitigate some or all of her damages.

### SIXTH DEFENSE

264. Plaintiff's claims under the New York State Human Rights Law, N.Y.S. Exec. Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Adm. Code § 8-107 *et seq.* ("NYCHRL"), and all other applicable law, including, if asserted at some point in

this litigation, Title VII of the Civil Rights Act of 1964, are barred because CIFCAM, CIFC, CIFCAC, and CIFCPH have reasonable policies and procedures in place to prevent and correct promptly the harm alleged, and Plaintiff unreasonably failed to avail herself of those policies and procedures to avoid the harm alleged.

**SEVENTH DEFENSE**

265. All decisions related to Plaintiff, if any, were based upon legitimate, non-discriminatory, non-retaliatory business reasons.

**EIGHTH DEFENSE**

266. Plaintiff's claims under the New York State Human Rights Law, N.Y.S. Exec. Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Adm. Code § 8-107 *et seq.* ("NYCHRL"), and all other applicable law, including, if asserted at some point in this litigation, Title VII of the Civil Rights Act of 1964, fail pursuant to the "same actor inference" defense as the same individual(s) who hired Plaintiff also participated in the decision to terminate Plaintiff.

**NINTH DEFENSE**

267. Assuming, *arguendo,* that Defendants violated the NYSHRL, Plaintiff's request for an award of punitive damages and attorneys' fees pursuant to the statute should be denied as a matter of law because punitive damages and attorneys' fees are not available under the NYSHRL.

**TENTH DEFENSE**

268. Plaintiff's Complaint fails to state a cause of action upon which punitive damages or attorney's fees may be awarded.

**ELEVENTH DEFENSE**

269. Defendants acted in good faith at all times.

**TWELFTH DEFENSE**

270. Plaintiffs fail to plead fraud and/or a claim under Rule 10b-5 with specificity in accordance with Fed. R. Civ. P. 9.

**THIRTEENTH DEFENSE**

271. Plaintiff failed to plead all of the required elements of a claim under Rule 10b-5 and/or plead a claim for a violation of Rule 10b-5 pursuant to the heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

**FOURTEENTH DEFENSE**

272. Plaintiff did not rely on any false representations made by the Defendants.

**FIFTEENTH DEFENSE**

273. Defendants did not make any material misrepresentations to Plaintiff.

**SIXTEENTH DEFENSE**

274. Defendants did not possess superior knowledge, not readily available to Plaintiff, with regard to any offers, sales or exchange of securities.

**SEVENTEENTH DEFENSE**

275. The Complaint is barred in whole or in part by the exclusivity of the New York Workers' Compensation Law.

**EIGHTEENTH DEFENSE**

276. Plaintiff failed to plead all of the required elements of a claim under § 73-210(b) and § 73-605 of the Delaware Securities Act (6 DEL. C. § 73-101 *et seq.*) and failed to plead fraud under this statute with the required degree of particularity.

## RESERVATION OF RIGHTS

277. Defendants reserve the right to assert other affirmative and/or other defenses with regard to some or all of Plaintiff's causes of action.

## COUNTERCLAIMS

Defendants CIFC Asset Management LLC ("CIFCAM"), CIFC Corp. ("CIFC") , CIFC Acquisition Corp. ("CIFCAC"), and CIFC Parent Holdings LLC ("CIFCPH") (collectively referred to herein as the "CIFC Defendants"), by their attorneys Epstein Becker & Green, P.C., for their Counterclaims against Plaintiff Nga Tran-Pedretti, respectfully state as follows:

## JURISDICTION AND VENUE

278. This Court has supplemental jurisdiction over Defendants' counterclaims pursuant to 28 U.S.C. § 1367 because the counterclaims are so related to the complaint that they form part of the same case and controversy.

279. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because the CIFC Defendants' principle place of business is located in Manhattan and a substantial part of the events giving rise to the CIFC Defendants' counterclaims occurred in Manhattan.

## FIRST COUNTERCLAIM BROUGHT BY DEFENDANT CIFC (BREACH OF CONTRACT)

280. The CIFC Defendants repeat and reallege each and every allegation set forth Paragraphs 1 through 279 of their Answer and Counterclaims as if fully set forth at length herein.

281. On or about November 28, 2005, Plaintiff and Commercial Industrial Finance Corp., which was a predecessor company to Defendant CIFC, together with Commercial Industrial Finance Corp.'s affiliates, for due consideration, entered into a Non-Disclosure, Non-

Competition, Non-Hiring, Non-Solicitation and Severance Agreement (the "Non-Disclosure Agreement).

282. Pursuant to paragraph 1(p) of the Non-Disclosure Agreement, the term "Trade Secret" means:

> information, including but not limited to, . . . lists of actual or potential customers, . . . which (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (B) is the subject of the Company's efforts to maintain secrecy."

283. Pursuant to paragraph 1(o) of the Non-Disclosure Agreement, the term "Proprietary Information" means "collectively the Confidential Information and Trade Secrets."

284. Pursuant to paragraph 2 of the Non-Disclosure Agreement, Plaintiff "acknowledge[d] that the Business is highly specialized, the identity and particular needs of the Company's Clients and Potential Clients may not be generally known, and the documents and information regarding the Company's Clients and Potential Clients, services, methods of operation, investments, methods, negotiations and management are highly confidential and constitute trade secrets."

285. Pursuant to paragraph 4(a) of the Non-Disclosure Agreement, Plaintiff was required to hold all company Proprietary Information, including the identities of its clients, in "strict confidence" and agreed to "not use, reproduce, disclose or otherwise distribute Proprietary Information, or any materials containing it, and will take those actions reasonably necessary to protect any Proprietary Information."

286. In addition to the foregoing representations, upon information and belief, Plaintiff knew specifically that confidentiality is an important aspect of the business relationship of the CIFC client identified in her Complaint.

287. Plaintiff willingly, knowingly and intentionally breached the terms of her Non-Disclosure Agreement when she disclosed the name of a client of the CIFC Defendants in her publicly-filed Complaint.

288. Plaintiff had no reason or requirement under the law to identify any client of the CIFC Defendants in her Complaint.

289. In identifying a client of the CIFC Defendants, which upon information and belief was done for no other purpose than to be vindictive, Plaintiff has breached her Non-Disclosure Agreement.

290. The CIFC Defendants have been damaged by Plaintiff's breach of her Non-Disclosure Agreement and suffered, among other things, damage to their reputations and damage to their client relationships.

291. Based on the foregoing, CIFC has been damaged in an amount to be determined at trial, which CIFC believes to be in excess of One Million Dollars ($1,000,000.00).

**SECOND COUNTERCLAIM BROUGHT BY DEFENDANT CIFC**
**(BREACH OF CONTRACT)**

292. The CIFC Defendants repeat and reallege each and every allegation set forth Paragraphs 1 through 291 of their Answer and Counterclaims as if fully set forth at length herein.

293. On or about June 15, 2011, Plaintiff and CIFC, entered into a stock option agreement (the "2011 Stock Option Agreement").

294. Pursuant to paragraph 7(a) of the 2011 Stock Option Agreement, the term "Confidential Information" is defined to include "identities of and information concerning clients."

295. Pursuant to paragraph 7(a) of the 2011 Stock Option Agreement, Plaintiff agreed that she "shall not disclose at any time, either during [her] Service or thereafter, any Confidential Information . . . of which the Participant is or becomes aware . . ."

296. In addition, pursuant to paragraph 7(a) of the 2011 Stock Option Agreement, Plaintiff further agreed that she "shall take all appropriate steps to safeguard Confidential Information and to protect it against disclosure, misuse, espionage, loss and theft."

297. In addition to the foregoing representations, upon information and belief, Plaintiff knew specifically that confidentially is an important aspect of the business relationship of the CIFC client identified in her Complaint.

298. Plaintiff willingly, knowingly and intentionally breached the terms of her 2011 Stock Option Agreement when she disclosed the name of a client of the CIFC Defendants in her publicly-filed Complaint.

299. Plaintiff had no reason or requirement under the law to identify any clients of the CIFC Defendants in her Complaint.

300. In identifying a client of the CIFC Defendants, which upon information and belief was done for no other purpose than to be vindictive, Plaintiff has breached her 2011 Stock Option Agreement.

301. The CIFC Defendants have been damaged by Plaintiff's breach of her 2011 Stock Option Agreement and suffered, among other things, damage to their reputations and damage to their client relationships.

302. Based on the foregoing, CIFC has been damaged in an amount to be determined at trial, which CIFC believes to be in excess of One Million Dollars ($1,000,000.00).

**THIRD COUNTERCLAIM BROUGHT BY DEFENDANT CIFC**
**(BREACH OF CONTRACT)**

303. The CIFC Defendants repeat and reallege each and every allegation set forth Paragraphs 1 through 302 of their Answer and Counterclaims as if fully set forth at length herein.

304. On or about March 21, 2012, Plaintiff and CIFC, for due consideration, entered into an additional stock option agreement (the "CIFC 2012 Stock Option Agreement").

305. Pursuant to paragraph 7(a) of the CIFC 2012 Stock Option Agreement, the term "Confidential Information" is defined to include "identities of and information concerning clients."

306. Pursuant to paragraph 7(a) of the CIFC 2012 Stock Option Agreement, Plaintiff agreed that she "shall not disclose at any time, either during [her] Service or thereafter, any Confidential Information . . . of which the Participant is or becomes aware . . ."

307. In addition, pursuant to paragraph 7(a) of the 2012 Stock Option Agreement, Plaintiff further agreed that she "shall take all appropriate steps to safeguard Confidential Information and to protect it against disclosure, misuse, espionage, loss and theft."

308. In addition to the foregoing representations, upon information and belief, Plaintiff knew specifically that confidentiality is an important aspect of the business relationship of the CIFC client identified in her Complaint.

309. Plaintiff willingly, knowingly and intentionally breached the terms of her 2012 Stock Option Agreement when she disclosed the name of a client of the CIFC Defendants in her publicly-filed Complaint.

310. Plaintiff had no reason or requirement under the law to identify any clients of the CIFC Defendants in her Complaint.

311. In identifying a client of the CIFC Defendants, which upon information and belief was done for no other purpose than to be vindictive, Plaintiff has breached her CIFC 2012 Stock Option Agreement.

312. The CIFC Defendants have been damaged by Plaintiff's breach of her CIFC 2012 Stock Option Agreement and suffered, among other things, damage to their reputations and damage to their client relationships.

313. Based on the foregoing, CIFC has been damaged in an amount to be determined at trial, which CIFC believes to be in excess of One Million Dollars ($1,000,000.00).

**FOURTH COUNTERCLAIM BROUGHT BY ALL CIFC DEFENDANTS**
**(TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)**

314. The CIFC Defendants repeat and reallege each and every allegation set forth Paragraphs 1 through 313 of their Answer and Counterclaims as if fully set forth at length herein.

315. The CIFC Defendants maintained business relationships with clients by providing financial services. These clients include individuals, public institutions and private entities. Plaintiff knew that the CIFC Defendants had business relationships with these clients by virtue of her prior employment at CIFC.

316. Upon information and belief, Plaintiff vindictively, intentionally and maliciously identified a client of the CIFC Defendants in the Complaint, which is a publicly availably document, with the intent of interfering with the CIFC Defendants' relationship with their clients.

317. Upon information and belief, Plaintiff vindictively, intentionally and maliciously created a false picture of Defendants, through spurious allegations in the Complaint concerning, *inter alia,* the provision of misleading financial information about Legacy CIFC to Deerfield

Capital Corp. and misstatements of fact concerning the value of investments in CIFC, with the intent of interfering with the CIFC Defendants' business.

318. Plaintiff's conduct may interfere with and injure CIFC Defendants' business.

319. Based on the foregoing, the CIFC Defendants have been damaged in an amount to be determined at trial, which the CIFC Defendants believe to be in excess of One Million Dollars ($1,000,000.00).

**FIFTH COUNTERCLAIM BROUGHT BY ALL CIFC DEFENDANTS**
**(*PRIMA FACIE* TORT)**

320. The CIFC Defendants repeat and reallege each and every allegation set forth Paragraphs 1 through 319 of their Answer and Counterclaims as if fully set forth at length herein.

321. The CIFC Defendants maintained business relationships with clients by providing financial services for those clients. These clients include individuals, public institutions and private entities. Plaintiff knew that the CIFC Defendants had business relationships with these clients by virtue of her prior employment at CIFC.

322. Plaintiff intentionally inflicted harm on the CIFC Defendants by vindictively and recklessly disclosing the identity of a CIFC client in a publicly-filed document, the identity of which Plaintiff knew was treated as confidential and proprietary information of the CIFC Defendants, in direct violation of confidentiality provisions of her Non-Disclosure Agreement, her 2011 Stock Option Agreement and 2012 CIFC Stock Option Agreement to intentionally damage the CIFC Defendants' relationships and reputations.

323. Plaintiff has no excuse or justification for this conduct.

324. As a result, the CIFC Defendants have sustained special damages in the form of lost business advantage and damage to their reputations.

325. Plaintiff is liable to the CIFC Defendants in an amount of special damages to be determined at trial, which the CIFC Defendants believe to be in excess of One Million Dollars ($1,000,000.00).

WHEREFORE, Defendants respectfully requests that the Court: (a) deny the relief sought by Plaintiff, (b) dismiss the complaint with prejudice in its entirety, (c) grant Defendants' counterclaims for lost business, other compensatory damages and punitive damages, (d) award Defendants costs, disbursements and reasonable attorneys' fees, and (e) grant Defendants such other and further relief that it deems just and proper.

Date: June 27, 2013

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Ronald M. Green
Ronald M. Green
John F. Fullerton III
Lori A. Jordan
250 Park Avenue
New York, New York 10177-0077
(212) 351-4500
rgreen@ebglaw.com
jfullerton@ebglaw.com
ljordan@ebglaw.com
ATTORNEYS FOR DEFENDANTS
and COUNTERCLAIMANTS